## LENAU, Adm'r, v. HOME STATE BANK et al.

No. 11579—Opinion Filed June 12, 1923.

Rehearing Denied July 17, 1923.

**1. Appeal and Error—Harmless Error—Statute.**

Section 2822, vol. 1, Comp. Stats. 1921, provides; "No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

**2. Same.**

The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

**3. Replevin — Judgment — Validity—Modification.**

Where plaintiff, A., sues B. and C. in replevin for the possession of personal property and obtains a verdict against B. for money due and against B. and C., both, for possession of the personal property, or its value, and in the same action defendant B. obtains a verdict, on his cross-petition, against his codefendant, C., for the possession of the property, or its value, the court is not authorized to render a judgment in favor of the plaintiff, A., for the return of the property, or its value, and also a judgment in favor of the defendant B., as against C., for the return of the property, or its value, as such judgment would render defendant C. doubly liable, and the judgment should be modified under authority of section 780. vol. 1, Comp. Stats. 1921, so that defendant C. would be only liable to plaintiff, A., for the amount of its judgment and costs and to his codefendant. B., for the return of the property, or its value, less the judgment of the plaintiff, A.

**4. Appeal and Error — Modification of Judgment in Replevin.**

Section 780, Comp. Stats. 1921, provides: "That the Supreme Court may reverse, vacate or modify judgments of the county, superior, or district court, for errors appearing on the record." Held, that the judgment in this case should be modified, and, as modified, is affirmed.

**5. Same.**

On examination of the record in this cause, there being no error or defect in the proceedings that affects the substantial rights of the plaintiff in error, other than the question of double liability, which is hereby modified, the judgment of the lower court, as modified, is affirmed.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by Home State Bank, of Hobart, Okla., against M. H. Anderson and N. D. Thurman. Judgment for plaintiff, and defendant M. H. Anderson brings error. Since trial and appeal, M. H. Anderson died and the cause was revived in both courts in the name of Charles W. Lenau, his administrator. Modified and affirmed.

George L. Zink, for plaintiff in error.

Rummons & Hughes, for defendants in error.

Opinion by THOMPSON, C. As a matter of convenience the parties will be referred to as they appeared in the lower court.

The action was a replevin action, and prayed judgment against the defendants for the return of 65 acres of wheat, grown on the northwest quarter of section 28, township 6 north, range 18 west, I. M., Kiowa county, plaintiff claiming the same by virtue of a chattel mortgage given by defendant. Thurman, to secure a note executed by him, in the sum of $1,260, upon which $800 had been paid, and alleging said wheat was reasonably worth $1,500; that defendant M. H. Anderson had taken wrongful possession thereof; alleging breach of the condition of the mortgage, and praying judgment against the defendants for the immediate possession of the 65 acres of wheat, which was in the shock, or the value thereof, and for $100 attorney's fees.

Defendant Thurman filed his separate answer, admitting the allegations of plaintiff's petition, and setting up a cross-petition against his codefendant, Anderson, in which he claimed that he was the owner of the wheat, subject to a lien to the United States for $180, and the mortgage of plaintiff; that the wheat was worth $1,500; that during his absence from home, defendant Anderson wrongfully and unlawfully took possession of the wheat, and refused to return the same; and praying for damages in the sum of $1,000, and asking judgment in his favor for the return of the wheat, or the value thereof.

The defendant Anderson filed a redelivery bond after the wheat had been taken from his possession by the officers under order of replevin, and thereafter defendant Anderson filed his separate answer to the plaintiff's petition: First, general denial, and alleging that the plaintiff was not the real party in interest. Second, admitting the execution of note and mortgage, but denying that the same was for a valuable consideration, or that there was anything due from Thurman to the plaintiff on account of said note and mortgage. That shortly after the commencement of this action, on the 30th day of August, 1919, he, having purchased the property in controversy from his codefendant, Thurman, demanded of plaintiff to know the amount due upon the promissory note and was advised by plaintiff's attorneys that the balance of the indebtedness was $554.46, $100 attorneys' fees, and the costs of this suit; that he offered to pay plaintiff $654.46, and to pay the costs of the action, and made a tender of said sum to cover the amount, and attorneys' fees and costs, which plaintiff refused; that there was nothing due upon the note and mortgage to the plaintiff, and that if there ever had been anything due, it had been fully paid and discharged; that plaintiff had no lien upon the property in controversy by reason of the chattel mortgage, or any special ownership or interest in the property; praying that plaintiff take nothing, and that he be discharged with his costs.

On the 12th day of December, 1919, defendant Anderson filed his answer to cross-petition of his codefendant, Thurman, denying all the allegations in said cross-petition; denying that Thurman had any interest in the property in controversy, and alleging that he was the owner of same; that defendant Thurman, owner of a leasehold interest in said lands, the same being Indian lands, on the 4th day of August, 1919, entered into a written contract with C. E. Threntham, by which he sold his leasehold in said lands, together with all the crops on said lands, to the said C. E. Threntham for a valuable consideration; attaching the contract as an exhibit; and that, thereafter, by mutual oral agreement of all the parties, this defendant Anderson was substituted for Threntham, and the transfer was regularly made by the Indian Department to Anderson, and that he thereby acquired the leasehold, possession of the land, and all the crops on said land, and the crops in controversy are a part of said crops, and that actual delivery was made to him of the same at the time of said substitution, and that he has since been the owner thereof, clear of the rights of defendant Thurman, and that he had paid the full price for said lease and crops to the defendant Thurman; and praying for possession thereof, and that the title should be confirmed in him, and that the defendant Thurman should recover nothing by reason of his cross-petition, and that he should recover his costs.

The part of said contract, attached as an exhibit, that is material is as follows:

"Party of the first part agrees to give second party possession of Indian lease, same being on the N. W. ¼ of sec. 28 in township 6 north, range 18, Kiowa county, Oklahoma, together with all crops on said land.

"It being understood that first party shall guarantee the transfer of said lease to second party by the Indian Dept. and peaceable possession given second party at the time transfer is made.

"The consideration of said transfer is the sum of ten hundred dollars."

The same is signed by C. E. Threntham and N. D. Thurman.

Plaintiff replied to Anderson's answer by way of a general denial, and defendant Thurman filed reply to Anderson's cross-petition, admitting the contract between himself and Threntham, and alleging that at the time of the execution of the contract the 65 acres of wheat had been severed from the soil and was standing in the shock, and was no longer a part of the crops on the land described in said contract; that it was mutually agreed and understood by and between this defendant and the said Threntham that the word "crops," used in said contract, meant growing crops, standing upon said land, unsevered from and still a part thereof; that defendant Anderson assumed the benefits and obligations of said contract in place and instead of the said Threntham, with full knowledge of said understanding and agreement; that Anderson acquired no greater right under the contract than that held by Threntham, and that the said 65 acres of wheat, standing in the shock, was, and still is, the property of this defendant.

On the 12th day of January, 1920, trial was had before a jury.

The testimony disclosed that the plaintiff, the Home State Bank, held a note against defendant Thurman for $1,260.05, which was past due and unpaid, and upon which $800 had been paid, which was secured by a recorded chattel mortgage on 65 acres of wheat, which had been severed from the soil, grown on Indian leased land, and that this action was filed on the 29th day of August, 1919; that on the day previous M. H. Anderson had taken possession of the wheat, and was hauling it out of the shock, and was stacking it; that the next day after the suit was brought defendant Anderson offered to pay plaintiff $554.46, balance of principal and interest on the note, and $100 attorney fees, and that attorneys for the bank would not accept same; that the amount due on September 19, 1919, after suit was brought, was $441.10; that a cashier's check in favor of defendant Thurman, for the sum of $441.10 on the Farmers' and Merchants' National Bank was delivered by Thurman to the plaintiff and attached to the note as collateral, but had not been applied on the payment of the note at the time of the trial.

The evidence upon the cross-petition, answer, and replies by the two defendants, Thurman and Anderson, is in sharp conflict upon the question whether the property in controversy passed under the contract. The testimony on part of the defendant Thurman affirmed that the wheat was excepted from sale at the time the contract was drawn, and the word "crops," used in the contract, was understood and agreed upon by them at the time not to apply to the wheat, which was then in the shock, and that defendant Anderson had knowledge of the fact when he was substituted by oral agreement for Threntham, and took over the lease and paid the consideration therefor. The testimony on the part of the defendant Anderson as clearly affirmed that the wheat was to pass under the contract, and that it was so understood between him and defendant Thurman when the Indian Department made the transfer, and that he had no knowledge to the contrary at the time of the transfer and the payment of the consideration.

At the close of the testimony the court instructed the jury on the issues between plaintiff and defendants, as follows:

"The uncontroverted evidence in the case proves that the plaintiff held a note and recorded mortgage against the property in controversy, and you are instructed to find for the plaintiff and against the defendant Thurman, for the amount due on said note, to wit, $100 attorney fees.

"It is also in evidence that defendant Thurman has paid the plaintiff the sum of $441.05, by means of a cashier's draft given plaintiff on the 19th day of September, 1919.

"You are instructed to credit the amount of this draft upon the note in controversy and return a verdict in favor of the plaintiff and against the defendant, Thurman, for the balance due on said note, to wit, the sum of $100 attorney fees.

"You are also instructed that you should find for the plaintiff the possession of the property in controversy, so that the same may be sold under the law and the proceeds arising therefrom be applied to the payment of the balance due on said note. You should also find the reasonable cash value of said wheat."

And the jury, under said instruction, returned the following verdict:

"We, the jury, empaneled and sworn to try the issues in the above entitled cause, do, upon our oaths, find for the plaintiff and against the defendants and the possession of the property in controversy and we find the value of the same to be $900. We further find in favor of plaintiff and against defendant N. D. Thurman in the sum of $100 attorney fees. G. D. Gilmore, Foreman."

And upon the issues raised by the cross-petitions and answers and replies by the de-

fendants, the jury returned the following verdict:

"We, the jury, empaneled and sworn to try the issues in the above entitled cause, do, upon our oaths, find for the defendant N. D. Thurman and against the defendant, M. H. Anderson, the return of the possession of the property in controversy and we find the value to be $900. We further find exemplary damages in favor of N. D. Thurman and against said M. H. Anderson in the sum of $ None. G. D. Gilmore, Foreman."

Motion for new trial was filed and overruled; exceptions saved, and upon said verdicts of the jury, the court rendered its judgment in favor of the plaintiff as against the defendants for the possession of the 65 acres of wheat, or the value thereof, and against the defendant N. D. Thurman for $100 attorney fees, and the costs of the action, and further rendered judgment in favor of the defendant N. D. Thurman on the verdict of the jury, upon his cross-petition on the issues between himself and defendant Anderson, for the possession of the 65 acres of wheat, or the value thereof, and the costs of the action. From which judgment of the court, defendant M. H. Anderson appeals to this court.

Plaintiff assigns five errors and argues only the propositions "that the court erred in instructing the jury and directing a verdict in favor of the plaintiff bank as against the defendant Thurman for $100 attorney fees, and a verdict in favor of the plaintiff bank, as against both of the defendants, for the possession of the property in controversy," and that the court erred in overruling motion for new trial.

It will be observed that there is no dispute that the note was executed and delivered to the plaintiff bank, and the mortgage given and recorded to secure the same, upon the wheat in controversy, and that defendant Anderson offered to pay the balance due on this note, after this action was filed, together with attorney fees of $100, but did not follow up his tender in court. That defendant N. D. Thurman admitted in his answer the execution and delivery of the note, and that he still owed a balance on the note, and it is undisputed that the plaintiff bank had in its possession a cashier's check for the full amount due on the balance of the note, except attorney fees, drawn in favor of and deposited by N. D. Thurman with the bank after this suit was commenced, which was attached to the note as collateral, but that it had not yet been applied on the note.

As between the defendants Thurman and Anderson, there was a clear cut issue between them as to who had the right to the possession of the wheat in controversy. Thurman affirmed that he had not sold it to Anderson, but had reserved it in his contract, and transfer of the lease, and that it was understood by Anderson that the wheat was not included in the sale; Anderson affirming that it was expressly understood that the wheat was included in the contract, and that it was so understood by the parties; and upon this issue there were 102 pages of testimony taken, one set of witnesses swearing positively that the wheat was not included, but was specifically excluded from the sale, and the other set of witnesses swearing positively that it was included in the contract and so understood by the parties. There is no complaint by plaintiff in error, and no question raised, and no error assigned by plaintiff in error upon this branch of the case.

The jury, having heard the evidence, and having the witnesses before it, and the case being properly presented to it upon this issue, found its verdict in favor of the defendant Thurman, and against defendant Anderson, and this finding of the jury is conclusive upon this court, and cannot be reviewed by this court. Under the verdict of the jury, the defendant Anderson must make return of the wheat, or the value thereof, and his right and title to the same was concluded against him by this verdict.

Anderson complains that his rights were invaded, and prejudicial error was committed by the court when the court instructed a verdict in favor of the plaintiff bank for a return of the wheat, or the value thereof. We cannot see how he was prejudiced in this regard, for the reason that in any event he has lost the right to the possession of the wheat to either the bank or to Thurman, and must make return to one or the other of them, or pay to them the value thereof. This being true, it is immaterial to him, except that he is not required to return the possession of the wheat, or the value thereof, to both of them, as manifestly there can be but one recovery against him in this case for a return of the wheat, or the value thereof.

Section 2822, vol. 1, Comp. Stats. 1921, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or as to error in any matter of pleading or

procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This court, in Midland Valley R. Co. v. Hardesty, 38 Okla. 559, 134 Pac. 400, said:

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

There was no personal judgment against the defendant Anderson upon the note or for attorney fees, but, on examination of the record, we find in the journal entry of the judgment that the court rendered its judgment in favor of the plaintiff bank as against both defendants for the possession of the 65 acres of wheat, or the value thereof, and again we find in said journal entry of the judgment that the court rendered judgment in favor of the defendant N. D. Thurman, upon the verdict of the jury, as against M. H. Anderson for the recovery of the wheat, or the value thereof.

It is our opinion that this judgment should be modified, under authority of section 780, vol. 1, Comp. Stats. 1921, to this extent: That the plaintiff bank should have judgment for the sum of $100 and its costs against the defendant Thurman, and that it should be satisfied out of said wheat, or the value thereof, and that defendant Thurman should have judgment against Anderson for the return of the wheat, or the value thereof, less the judgment of the plaintiff bank for the amount of its recovery in this case.

We are of the opinion that the judgment of the lower court should be modified, as above stated.

It follows, therefore, that the decision of the lower court is affirmed as modified by this opinion.

By the Court: It is so ordered.